

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 29, 1947

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-420

Re: Authority of the
Comptroller to is-
sue, under Arti-
cles 7291 and 7308,
V.C.S., certifi-
cates of cancella-
tion of sales to
the State of prop-
erty sold in tax
foreclosure pro-
ceedings.

Dear Sir:

Your opinion request dated October 8, 1947, is as follows:

"I am enclosing letter and file from Mr. Thurman L. Mulhollan, Lampasas, Texas, in which he requests this department to cancel a first sale to certain property in the town of Lampasas made in 1911 and issue a certificate of relinquishment as the law provides.

"Since this department is undecided as to the validity of the judgment entered against this property in 1911 and the officer's return reporting sale of the property mentioned, I shall thank you to advise me the proper reply to make to Mr. Mulhollan's letter."

In order to make clear the full import of your request, it is necessary to quote the letter of Mr. Thurman L. Mulhollan, Attorney, to you under date of October 4, 1947, which is as follows:

"Pursuant to the provisions of Articles 7291 and 7308, Vernon's Texas Civil

Statutes, request is here made for the cancellation of a certain tax sale of Lots Nos. 7, 8, and 9, in block No. 15, of the Matthews & Wilkes Addition to the town of Lampasas, Lampasas county, Texas, held by virtue of a certain judgment, rendered in the District Court of Lampasas county, Texas, on the 11th day of April, 1911, in Cause No. 2808, styled, The State of Texas vs The Unknown Owner or Owners. (Said judgment is shown in the Statement of Facts, hereto attached, on page 02.) Upon which judgment an order of sale was issued, upon which the sheriff of Lampasas made his return thereon on June 6, 1911, reciting that the lands and premises were struck off to the State of Texas. (said Return is shown on page 03 of the Statement of fact)

"It is believed that the sale is irregular in the following particulars, to-wit:

"(1) The last record owners, in fact no record owners, were not cited in said suit, the defendants were merely designated as 'The Unknown Owner or Owners.'

"(2) The judgment does not contain the recital that the defendants were even cited as required by law.

"(3) The Officer's Return merely states that the lands and premises were struck off to the State of Texas; no deed to the state appears of record and none of the reports, required by law to be made to the commissioner's court, or to the tax assessor and collector of said county appears to have been made. This fact is strongly borne out by the fact that the tax collector continued to carry this property on his rolls as 'Unknown' or 'Unrendered'.

"As favoring the cancellation of said sale, on September 22, 1944, the State of Texas, for itself and Lampasas county, together with the City of Lampasas and Lampasas Independent School District as impleaded defendant taxing units, brought another suit for taxes on said identical property, citing

therein the last record owners thereof, at which sale, P. W. Smith and wife, Mattie Smith, became the purchasers of said Lots Nos. 7, 8, and 9, in block 15 of the Matthews & Wilkes Addition to the town of Lampasas, Lampasas county, Texas. The judgment in this case, together with its subsequent order of sale appears in the Statement of Facts on pages 05 and 10.

"The rights of no third party has been injected into the situation between the time of the first sale and the last sale.

"The purchasers at the last sale, that is, P. W. Smith and wife, Mattie Smith, both acted in good faith in the purchase of said lands at said sale.

"In the event said first sale is cancelled by your office, the purchasers of the second sale would have succeeded to the position of the last record owner of said land, to-wit:  J. R. Freeman.

"Therefore, it is requested that, in the interests of justice, that the first sale should be cancelled and a certificate of relinquishment be issued out of your office, as the law provides, to the succeeding parties to the last record owners.

"What ever costs, interest and taxes might be due by virtue of the cancellation of said sale will be paid upon receipt of notice of the amount thereof."

Your request is reduced to the simple proposition of your authority to issue a certificate of cancellation as requested by Mr. Mulhollan of the sale in a tax foreclosure suit in the District Court of Lampasas County, in Cause No. 2808, styled The State of Texas v. The Unknown Owner or Owners, in 1911, wherein the State became the purchaser. Mr. Mulhollan cites Articles 7291 and 7308, V.C.S., as your authority for compliance with his request.

These articles of the statute respectively provide:

Art. 7291
"<u>The owner of real estate which has been bought in by the State for taxes, or his heirs or assigns, may redeem the same at any time prior to the sale thereof, by the payment to the collector of the county in which such real estate is situated</u>, or to the Comptroller, if in an unorganized county, of the amount designated by the Comptroller as due thereon with costs of advertisement; and if it shall at any time appear to the satisfaction of the Comptroller that any land has been sold to the State for taxes which have been paid, or that the sale has not been made in accordance with the law authorizing the sale of land for taxes, he shall upon the payment of the amount that may be due thereon, cancel such sale; and deliver to the owner of the land, or his agent, a certificate under seal of his department, setting forth the fact that such land has been redeemed, or that such sale has been cancelled; which certificate shall release the interest of the State and the same may be recorded in the proper county as other conveyances of real estate are recorded."

Art. 7308.
"The tax collector shall, prior to the sale of any real estate that has been previously bid off to the State at tax sales, the owners of which have failed to redeem the same, advertise the real estate to be sold in some newspaper published in the county for six successive weeks, if there be such newspaper published therein, otherwise he shall post advertisements of said sale at the courthouse door and at one public place in each justice's precinct of his county for at least six weeks, giving in said advertisement, whether published or posted, such description of the lands to be sold as shall be given on the Comptroller's list, and stating the time, place and terms of sale, which shall be between legal hours on the first Tuesday of some specified month at the courthouse door at public outcry, to the highest bidder for cash; provided

that no real estate shall in any case be sold for less than the amount designated by the Comptroller as due thereon, together with all costs of advertisements and sale. <u>The former owner of any such real estate, his heirs or assigns, may redeem the same at any time prior to the sale thereof, by the payment to the collector of the county in which such real estate is situated,</u> or to the Comptroller, if in an unorganized county, of the amount designated by the Comptroller as due thereon, with costs of advertisement. If it shall at any time appear to the satisfaction of the Comptroller that any land has been sold to the State for taxes which have been paid, or that the sale has not been made in accordance with the law authorizing the sale of land for taxes, he shall, upon the payment of the amount that may be due thereon, cancel such sale; and in all cases he shall deliver to the owner of the land, or his agent, a certificate under the seal of his department, setting forth the fact that such land has been redeemed, or that such sale has been canceled, which certificate shall release the interest of the State, and the same may be recorded in the proper county as other conveyances of real estate are recorded." (Emphasis supplied)

These statutes have reference only to summary sales by the Tax Collector authorized at the time of their passage and have no reference to judicial sales, as is the case here. Hence, if we should hold that the sale under Cause No. 2808, in 1911, is void for lack of proper service or for the other matters suggested by Mr. Mulhollan--a question we need not and do not decide--it would not aid Mr. Smith, the purchaser at the tax sale in 1944 of the same property in whose behalf Mr. Mulhollan desires a certificate of cancellation. This for the simple reason that the statutes relied upon by him are not applicable to judicial sales. Moreover, if the statutes were applicable to judicial sales, still Mr. Smith could get no relief from them, for they apply by their specific terms to the owner of real estate which has been bought in by the State for taxes, or his heirs or assigns. Mr. Smith is neither an owner, an heir or assignee as specified in Article 7291, nor a former owner, or heir or assignee as specified in Article 7308. These statutes clearly refer to the owner or former owner of the real

estate at the time sale is made to the State. Mr. Smith, the purchaser at the tax sale of the same property in the 1944 suit, cannot by any reasonable construction be such an owner or former owner.

The foregoing is sufficient to show that you have no authority to comply with Mr. Mulhollan's request in behalf of his client, and you are accordingly so advised.

## SUMMARY

The Comptroller has no authority by virtue of Articles 7291 and 7308, V.C.S., to issue a certificate of cancellation of sale of property bought in by the State at tax foreclosure sale, as such articles apply to summary sales but not to judicial sales. The purchaser at a subsequent sale of the same property in a tax foreclosure suit is neither an owner, a former owner, an heir or assignee as provided in said statutes.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By L. P. Lollar
Assistant

LPL/JCP/erc

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL